NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEW YORK SHIPPING ASSOCIATION, INC., <br><br> Plaintiff, <br><br> v. <br><br> WATERFRONT COMMISSION OF NEW YORK HARBOR, <br><br> Defendant. | Civil Action No.: 10-5633 (JLL) <br><br> **OPINION** |

**LINARES**, District Judge.

This matter comes before the Court by way of a motion to dismiss filed by Defendant on February 3, 2011 for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure and for failure to state a claim upon which relief can be granted under Rule 12(b)(6). The Court has considered the parties' submissions in support of and in opposition to the present motion and decides the matter without oral argument pursuant to Rule 78. For the reasons set forth below, Defendant's motion is granted.

**I.     BACKGROUND**

The following facts are taken from Plaintiff's Amended Complaint unless otherwise noted. Plaintiff, the New York Shipping Association (the "NYSA") is an association of marine terminal operators, stevedoring companies, and vessel operators engaged in international trade and commerce in the Port of New York and New Jersey (the "Port"). The NYSA negotiates and

administers collective bargaining agreements with workers represented by various trade unions.

Defendant, the Waterfront Commission of New York Harbor (the "Commission") is an instrumentality of the States of New York and New Jersey that oversees operations of the Port through licensing, regulatory, and investigatory powers.  The Commission was created in 1953 under the Waterfront Commission Compact, an interstate compact between New York and New Jersey.  The Commission operates pursuant to the Waterfront Commission Act ("WCA"), N.J. Stat. Ann. §§ 32:23-1, et seq., which incorporates the terms of the Waterfront Commission Compact.  Among the Commission's duties is the issuance of licenses to companies that operate in the Port.  The Commission bases its licensing determinations on the "good character and integrity" of the applicant company.  Id. at § 32:23-21(b).  The Commission obtains revenue from statutory assessments paid by companies operating in the Port, including members of the NYSA.  The WCA limits this assessment as not to exceed two percent.  Id. at § 32:23-58.

In August 2010, the Commission announced a plan to implement a program in which Independent Private Sector Inspectors General ("IPSIGs") could provide additional oversight of operations within the Port.  The Commission circulated a "Request for Expressions of Interest and Statements of Qualification in Being Considered for Appointment as an Independent Private Sector Inspector General," seeking applicants interested in acting as IPSIGs and describing the IPSIG program as follows:

> The IPSIG will establish and maintain internal controls designed to deter unethical or illegal conduct, and will report any unethical or illegal conduct observed to the Commission.  The IPSIG will examine the operations of stevedoring companies to ensure that they run effectively without fraud, criminal influence, improper accounting and/or hiring practices, or other malfeasance.  <u>The Commission may require a stevedoring company to retain an IPSIG pursuant to a responsibility agreement or stipulation with the Commission, in order for that stevedoring company to continue to operate in the Port</u>.

> Upon selection by the Commission, the IPSIG will be hired by the stevedoring company but will report directly to the Commission, with the stevedoring company retaining responsibility for payment of the IPSIG's services.

(Am. Compl. Ex. 1 (emphasis added).)

On September 23, 2010, members of the Commission appeared before the New Jersey Senate Economic Growth Committee.[1] The Commission's Executive Director, Walter Arsenault, testified that the Commission will not in fact "require" that a stevedoring company retain an IPSIG, as suggested in the August 2010 circular, but rather that such companies would have the option to retain an IPSIG in order to maintain their license to operate in the Port, should licensure have otherwise been denied by the Commission.[2]  Mr. Arsenault testified that applications for licenses are reviewed by the members of the Commission, and if the Commission finds that the company does not possess the "requisite good character and integrity," it then issues a notice of hearing.  Senate Committee Hr'g at 31.  Mr. Arsenault stated that following the denial of a license application,

> [the applicant] can go and have the hearing, or they can request and accept an IPSIG.  If they lose the hearing, they have the opportunity to appeal it to the Commissioners, or they can accept an IPSIG.  If they lose with the Commissioners, they have the opportunity to accept an IPSIG or to appeal it to the courts in the states of New York and New Jersey.  And even after they lose that hearing -- rather than close down the company, we want to

---

[1] Plaintiff's Amended Complaint does not make direct reference to this hearing or any portions of its testimony.  The Court, however, considers on the instant motion the transcript of the hearing as a matter of public record.  Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc., 998 F.2d 1192, 1196–97 (3d Cir. 1993).

[2] Testimony Concerning the Waterfront Commission of New York Harbor's Proposal to Require Stevedoring Companies to Retain Independent Private Sector Inspectors General, Pursuant to a Responsibility Agreement or Stipulation with the Commission, in Order for Stevedoring Companies to Continue to Operate in the Port of New York and New Jersey; Its Legislative Authority, Its Need, and Its Impact on the Competitiveness of the Port, 2010 Leg., 214th Sess. 31 (N.J. 2010) (hereinafter "Senate Committee Hr'g").

> give those companies an opportunity to continue to employ people in the Port of New York, and we're willing to offer them an IPSIG program.

Id.  Plaintiff does not dispute Mr. Arsenault's description of the IPSIG program and its relevant procedures.

On October 29, 2010, the NYSA filed the instant action seeking a declaratory judgment that the IPSIG program exceeds the Commission's statutory authority, violates the Commission's enabling statute, and violates constitutional separation of powers.  The NYSA further seeks an injunction restraining the Commission from implementing the IPSIG program.

## II.   JURISDICTION

Defendant's arguments in support of the present motion notwithstanding, the Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337.  The Supreme Court has held that because congressional consent transforms an interstate compact within the Compact Clause into the law of the United States, "the construction of an interstate agreement sanctioned by Congress under the Compact Clause presents a federal question." Cuyler v. Adams, 449 U.S. 433, 438 (1981); see also Waterfront Comm'n v. Sea Land Service, Inc., 764 F.2d 961, 963 n.2 (3d Cir. 1985).  The Waterfront Commission compact is within the Compact Clause, and Congress has consented to it.  Act of Jan. 3, 1953, ch. 407, 67 Stat. 541 (1953); see Waterfront Comm'n of New York Harbor v. Construction and Marine Equipment Co., 928 F. Supp. 1388, 1394 (D.N.J. 1996).

## III.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a court must grant a motion to dismiss if it lacks subject matter jurisdiction to hear a claim.  A motion under Rule 12(b)(1) "may be treated as either a facial or factual challenge to the court's subject matter jurisdiction."  Gould

Elecs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000).  Defendant styles its motion as a facial subject matter jurisdiction challenge.  (Def.'s Mot. Br. at 15.)  In a facial attack, the movant challenges the legal sufficiency of the claim, and the standard is therefore similar to that of a Rule 12(b)(6) motion.  Petruska v. Gannon University, 462 F.3d 294, 302 n.3 (3d Cir. 2006).  A court may thus "consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents."  New Jersey Mfrs. Ins. Co. v. United States, No. 07-2653, 2008 WL 2168006, at *2 (D.N.J. May 22, 2008) (citing Pension Benefit Guaranty, 998 F.2d at 1196).

For a complaint to survive dismissal under Rule 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The plausibility standard is not akin to a " 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully;" mere consistency with liability is insufficient.  Id.  In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party.  See Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[;] [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 129 S.Ct. at 1949.  It is the underlying specific facts alleged in a complaint that should be treated as true and evaluated.

**IV.    DISCUSSION**

Defendant argues that this Court is without subject matter jurisdiction to hear Plaintiff's

claims because Plaintiff lacks standing to assert such claims and because Plaintiff's claims are unripe. Defendant further contends that Plaintiff has failed to state a claim upon which relief can be granted because the IPSIG program falls with the Commission's statutory authority, is not prohibited by the WCA, and does not violate the constitutional separation of powers.

Article III of the Constitution confines the jurisdiction of the federal courts to "Cases" and "Controversies." To ensure the presence of a "case" or "controversy," a plaintiff must show that (1) it personally suffered an actual or threatened injury; (2) the injury is fairly traceable to the defendant's illegal conduct; and (3) the injury is likely to be redressed by a favorable decision. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992); Valley Forge Christian Coll. v. Ams. United for Separation of Church & State Inc., 454 U.S. 464, 472 (1982). A plaintiff's "injury in fact" must amount to an invasion of a legally protected interest which is (a) "concrete and particularized" and (b) "actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 561. However, where "the acts necessary to make the injury happen are at least partly within the plaintiff's own control," the Supreme Court has "insisted that the injury proceed with a high degree of immediacy, so as to reduce the possibility of deciding a case in which no injury would have occurred at all." Id. at 564 n.2. In cases brought under the Declaratory Judgment Act, 28 U.S.C. § 2201, a plaintiff must show that an "actual controversy" exists, such that "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Lake Carriers' Ass'n v. MacMullan, 406 U.S. 498, 506 (1972).

Defendant primarily argues that the NYSA[3] lacks standing to bring this action because participation in the IPSIG program is not mandatory, but "elective." (Def.'s Mot. Br. at 18.) Defendant explains that the IPSIG program merely provides an option for an NYSA member who is faced with a possible denial of a license to avoid being shut down. (Id. at 19; see also Senate Committee Hr'g at 31.) While the Amended Complaint quotes the Commission's statement in the August 2010 circular that it "may require a stevedoring company to retain an IPSIG," Plaintiff does not directly allege that the program permits the Commission to require such retention. The Amended Complaint references only the Commission's "announcement that it may require a licensed stevedoring company to retain an IPSIG," which will allegedly "be a factor in . . . license-application determinations" for companies operating under temporary permits. (Am. Compl. ¶ 19.) The Court thus interprets Plaintiff's Amended Complaint as alleging only that the Commission announced a program in which it may require an applicant company to retain an IPSIG, not that the program in fact permits the Commission to require the retention of IPSIGs. Indeed, Plaintiff claims that the program presents its members with a "Hobson's choice of losing its license or consenting to an IPSIG," id. at ¶ 21, not that the program forces IPSIGs upon them. The Amended Complaint thus accords with the Commission's testimony before the Economic Growth Committee that the IPSIG program simply provides companies with the option to retain an IPSIG in order to obtain a license that

---

[3]An organization may assert claims on behalf of its members if "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 343 (1977). Defendant does not dispute that the NYSA would have standing to bring this action if its members otherwise would.

might otherwise be denied.

Plaintiff's claim that the IPSIG program threatens either imminent pecuniary injury or imminent licensing status injury to its members is therefore unavailing.  As an initial matter, the Amended Complaint does not allege that any NYSA member has recently been denied a license by the Commission or that any NYSA member has retained an IPSIG in order to avoid such a denial.  Plaintiff has also not alleged that the Commission's extensive administrative and judicial appeals process has been altered in any way by the IPSIG program; the program instead appears to add an alternative to that process.  Indeed, whether any member will ever be threatened with the loss of its license is determined not by the existence of an IPSIG program, but by a finding by the Commission that the company lacks the "good character and integrity" required for licensure.  While it is conceivable that, as Plaintiff alleges, the Commission could take the availability of the IPSIG program into account when making its licensing determinations, Plaintiff has alleged no facts that tie this hypothesis to any actual or imminent injury to its members.  At bottom, the character and integrity of a stevedoring company lies within the control of the company itself, and no facts have been alleged to show that their alleged "Hobson's choice" will arise with any degree of immediacy, much less the "high degree of immediacy" demanded in this context.  See Lujan, 504 U.S. at 564 n.2.  Plaintiff has therefore failed to plead facts sufficient to show that the mere existence of the IPSIG program threatens imminent pecuniary injury to any of its members, or imminent injury to the licensing status of any of its members, such that an "actual controversy" exists for this Court to adjudicate.[4]

---

[4]An NYSA member may of course one day suffer a cognizable injury due to the IPSIG program, as implemented.  The Court's conclusions here are therefore likely to find equal support under the ripeness doctrine.  See MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 128 n.8

Perhaps recognizing this deficiency, Plaintiff offers two alternative theories of standing. Plaintiff alleges that its members have suffered injury to their:

1. "[R]ight to participate in the legislative process necessary for the implementation of an IPSIG program in order to protect their interest in ensuring that the procedures and programs of the Commission are implemented in a fair, reasonable, and lawful manner;" and

2. "[R]ight to have the statutory assessments they pay for the budgeted expenses of the Commission to be used only for matters for which the Commission has been authorized by the legislatures of the States of NJ and NY, since the Commission has already improperly expended assessment funds to develop and promulgate an IPSIG program and select and certify persons as approved Commission IPSIGs."

(Am. Compl. ¶ 20.)

Both of Plaintiff's theories of standing presume that in formulating an IPSIG program the Commission overstepped its legal authority. This presumption is precisely the legal conclusion for which Plaintiff now seeks a declaratory judgment. This circularity notwithstanding, the Court notes that the Supreme Court has "repeatedly held that an asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court." Whitmore v. Arkansas, 495 U.S. 149, 160 (1990) (quoting Allen v. Wright, 468 U.S. 737, 754 (1984)). The NYSA's claimed "right to participate in the legislative process"—presumably to lobby against the IPSIG program, had it been proposed as legislation and not enacted outside the agency's delegated authority, as alleged—arises only from the organization's basic interest that the Commission comply with the WCA and respect separation of powers. This interest is no different from the "generalized interest of all citizens in constitutional governance" and is insufficient to confer standing. Id.

---

(2007) (noting that in the declaratory judgment context, standing and ripeness may "boil down to the same question").

Plaintiff has likewise failed to direct the Court to any case in which the payment of a statutory assessment was sufficient to transform a generalized grievance into a "concrete and particularized" injury for which a court may grant relief. Indeed, Plaintiff's second allegation of standing is akin to an ordinary citizen arguing that his payment of taxes alone entitles him to challenge government action, an argument which the Supreme Court has consistently rejected. See Hein v. Freedom From Religion Found., 551 U.S. 587, 599–602 (2007) (citing Doremus v. Board of Ed., 342 U.S. 429, 433 (1952)) (noting the narrow exception for alleged Establishment Clause violations). Plaintiff has not alleged that statutory assessments have been increased beyond the two percent ceiling provided by the WCA, nor has Plaintiff pled facts that contradict the Commission's statements that the IPSIGs would be funded only by those companies who choose to retain such services. (See Am. Compl. ¶ 11; Senate Committee Hr'g at 31.) No facts in the Amended Complaint show that the IPSIG program imposes, or threatens to impose, any mandatory additional cost on the stevedoring companies. The Court thus concludes that Plaintiff has failed to allege facts sufficient to show that the existence of the IPSIG program, without more, has caused an "actual or imminent" injury to any NYSA member. As there accordingly exists no substantial controversy of sufficient "immediacy and reality to warrant the issuance of a declaratory judgment," MacMullan, 406 U.S. at 506, the Court concludes that the Amended Complaint does not plead facts sufficient to support a finding that Plaintiff has standing to bring this action.[5]

## V. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss pursuant to Federal Rule of

---

[5]Having so ruled, the Court declines to consider Defendant's remaining arguments.

Civil Procedure 12(b)(1) is granted. The Court having ruled upon Defendant's motion as a "facial attack," Plaintiff's Amended Complaint will be dismissed without prejudice. An appropriate Order accompanies this Opinion.


DATED: March 18, 2011                        /s/ Jose L. Linares  
                                                          JOSE L. LINARES  
                                                          UNITED STATES DISTRICT JUDGE